IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-243 |
| v. | ) | |
| | ) | The Honorable T. S. Ellis, III |
| FILIPPO PARLAGRECO, | ) | |
| Defendant. | ) | Sentencing: March 5, 2021 |
| | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

Defendant Filippo Parlagreco comes before this Court having been convicted of the production, distribution, and possession of child pornography, during which crimes he terrorized numerous children across the country over the course of several years.[1] As reflected in the Presentence Investigation Report ("PSR," ECF No. 39), the correctly calculated Guidelines sentence is life imprisonment capped at the statutory maximum of 720 months' imprisonment (and with a mandatory minimum term of incarceration of 180 months). For the reasons stated herein, the United States requests that the Court sentence the defendant to the Guidelines term of imprisonment, followed by a lifetime of supervised release, full restitution to the victims, forfeiture of the electronic devices used in connection with his crimes, and special assessments as set forth in statute. Such a sentence is sufficient but not greater than necessary to reflect the gravity of the defendant's conduct—repeatedly preying on innocent children to satisfy his illicit and sadistic sexual desires—and to meet the other 18 U.S.C. § 3553(a) sentencing factors.

---

[1] The complete Victim Impact Statements of those victims who were able and willing to come forward are being submitted under seal pursuant to 18 U.S.C. § 3509(d)(2).

# BACKGROUND

## I.       The Defendant's Relentless Sexual Exploitation of Minor Victim 1

In the summer of 2017, the defendant began communicating with a fourteen-year-old girl, Minor Victim 1, using various social media applications. PSR ¶ 17. Although the defendant was an adult male in his thirties, he portrayed himself to his unsuspecting victim as being a fellow minor female. *Id.* With this trickery, the defendant deceived Minor Victim 1 into sending him nude photographs of herself. *Id.* The defendant thereafter posted the nude photographs of Minor Victim 1 to another social media application, using Minor Victim 1's real name in the caption. *Id.* ¶ 18.

When Minor Victim 1 discovered this posting, in April 2018, she contacted the defendant (whose true identity was still unknown to her) and requested that the photographs of her be removed. *Id.* ¶ 19. The defendant informed Minor Victim 1 that the "only way out" was for Minor Victim 1 to produce child pornography for him immediately: to go to the bathroom at the office where she was currently in a therapy session, take sexually explicit photos of herself, and send them to him. *Id.* Although Minor Victim 1 initially rebuffed the defendant's instructions, the defendant ultimately achieved his despicable goal, convincing Minor Victim 1 that "nothing [else] w[ould] happen" only if she did as he said. *Id.* Despite his promises, the defendant nonetheless continued to press Minor Victim 1 to take and send him additional explicit photos. *Id.* In an act of great courage, Minor Victim 1 then disclosed the defendant's crimes to her parents, who contacted local law enforcement in an effort to identify the perpetrator. *Id.* ¶¶ 18-19.

Local law enforcement was unsuccessful at identifying the defendant, however, and he continued to torment Minor Victim 1 for years. He posted explicit photographs of her on other social media accounts, contacting her friends and associates in an effort to obtain more sexually explicit photographs of her. *Id.* ¶¶ 20, 22, 25. In December 2019, the defendant again contacted

Minor Victim 1, threatening to further circulate the child pornography in which she was depicted if she did not engage with him. *Id.* ¶ 21. She blocked the defendant's account, *id.*, but the defendant created a new account to contact her in February 2020, warning her, "This will continue until ya submit for about an hour or so." *Id.* ¶ 26. She blocked that account, but he contacted her with still another account in March 2020, warning her to "do what I say." *Id.* ¶ 27. She blocked that account as well, yet he contacted her again, warning her to "obey me" if she wanted him to "stop." *Id.* ¶ 28.

The defendant did not stop the exploitation, however—not until he was finally identified and arrested by the FBI in June 2020, after law enforcement was able to trace IP addresses used by some of the above-described accounts back to his residence. *Id.* ¶¶ 1, 24, 29, 58. Sexually explicit images of Minor Victim 1 were found during the FBI's search of the defendant's electronic devices, *id.* ¶ 84, and further investigation revealed that Minor Victim 1 was just one among numerous children whom the defendant had victimized over the course of many years.

## II.     The Defendant's Extensive Sexual Exploitation of Other Minors

### A.     Minor Victim 2

In December 2019, the defendant contacted an eleven-year-old girl, Minor Victim 2, using social media. *Id.* ¶ 31. He told her that he had a nude photograph of her and that "if u do what I ask[,] you won't have to worry[,] no one will see them." *Id.* He then demanded that she take sexually explicit photographs of herself—telling her to "squat in front of that mirror and spread your legs" and to "open your pussy with two fingers"—and send them to him. *Id.* Minor Victim 2 complied, and he then demanded that she take and send him additional explicit photos. *Id.* When Minor Victim 2 tried to refuse, he threatened to—and did—share the sexually explicit photos of Minor Victim 2 with others. *Id.* ¶¶ 32-34. The defendant ultimately forced Minor Victim 2 to send

3

the defendant approximately 25-30 photos of herself, in various stages of dress, as a result of his extortionate scheme. *Id.* ¶ 33. Sexually explicit images of Minor Victim 2 were also subsequently found in an encrypted portion of the defendant's phone. *Id.* ¶ 34.

B.      Minor Victim 3

In approximately 2017 to 2018, the defendant contacted Minor Victim 3, who was then an approximately twelve- to thirteen-year-old girl, over social media. *Id.* ¶ 36. Pretending to be a fifteen- or sixteen-year-old girl, the defendant got Minor Victim 3 to send him a nude photograph of herself and he sent a photo of a female in return. *Id.* The defendant then began requesting additional sexually explicit photos, and after she blocked one of his social media accounts, he threatened to share her nude photograph with others if she did not unblock him. *Id.* Sexually explicit images of Minor Victim 2 were subsequently found in an encrypted portion of the defendant's phone. *Id.*

C.      Minor Victim 4

In October 2019, the defendant contacted Minor Victim 4, an eleven-year-old girl, over social media. *Id.* ¶ 37. The defendant threatened to post sexually explicit images of Minor Victim 4 on various social media platforms with her full name unless she took and sent him additional sexually explicit images of herself. *Id.*; *see also id.* (telling the child to get "ready to be my little whore"). The defendant continued to contact Minor Victim 4 through the winter of 2019. *Id.*

D.      Minor Victim 5

In March 2020, the defendant contacted Minor Victim 5, a fifteen-year-old girl, on social media. *Id.* ¶ 38. He sent her pornographic photos of her that he had in his possession, and taunted her, "I'm assuming you don't want those getting out[,] ya?" *Id.* Sexually explicit images of Minor Victim 5 were subsequently found in an encrypted portion of the defendant's phone. *Id.*

4

E.     Minor Victim 6

In November 2019, the defendant sent Minor Victim 6, a sixteen-year-old girl, a nude photograph of her classmate, Minor Victim 12, standing in front of a mirror with her shirt up. *Id.* ¶ 40. The defendant stated that he had obtained pornographic images of Minor Victim 12 from Minor Victim 12's ex-boyfriend, and demanded that Minor Victim 6 send him (the defendant) sexually explicit images and videos of herself. *Id.* Among the conduct that the defendant demanded to see of Minor Victim 6 was a video of Minor Victim 6 engaged in anal intercourse. *Id.* ¶ 39. Minor Victim 6 was concerned that Minor Victim 12's ex-boyfriend had given the defendant Minor Victim 6's home address, and Minor Victim 6 felt pressured to comply with the defendant's demands. *Id.* ¶ 40. She sent him three videos of herself engaged in sexual intercourse, and informed him that she was only fifteen years old in the videos. *Id.* ¶ 39. The defendant continued to demand sexually explicit images from Minor Victim 6, including with instructions for specific poses he wanted her to make. *Id.* Sexually explicit images of Minor Victim 6 were subsequently found in an encrypted portion of the defendant's phone. *Id.* ¶ 41.

F.     Minor Victim 7

Around 2017-2018, the defendant obtained sexually explicit images of Minor Victim 7, taken while she was a high school freshman, and threatened to leak the photos to others if she did not provide him with more. *Id.* ¶ 42; Victim Impact Statement of Minor Victim 7, at 1, attached as Ex. 1 (sealed). Minor Victim 7 told the defendant she would go to the police, but she was terrified of her parents finding out what had happened, and he called her bluff. *Id.* at 1-2. After she refused to provide him with additional photos, he made good on his threats: he created a social media account with her name and social media handles, and posted both explicit and nonexplicit images

of her that he had collected over the years. *Id.* Sexually explicit images of Minor Victim 7 were ultimately found in an encrypted portion of the defendant's phone. PSR ¶ 43.

### G. Minor Victim 8

In February 2018, the defendant contacted Minor Victim 8, who was then a twelve-year-old girl, on social media and got the victim to send him nude photographs of herself. *Id.* ¶ 45. The defendant then threatened to forward those images and videos of Minor Victim 8 to her friends and followers on social media. *Id.* Minor Victim 8 changed her social media accounts, but the defendant continued to stalk her through other accounts and demand additional child pornography. *Id.*; *see also id.* ¶ 44 (warning her in October-November 2019 that "Daddy is waiting").

In February 2020, Minor Victim 8's friend informed Minor Victim 8 that a social media user—subsequently identified as the defendant—had sent the friend the nude photos of Minor Victim 8 from years before and was trying to obtain information about Minor Victim 8 from the friend. *Id.* ¶ 45. Minor Victim 8 informed her parents, who contacted local police. *Id.* Sexually explicit images of Minor Victim 8 were ultimately found in an encrypted portion of the defendant's phone. *Id.* ¶ 46.

### H. Minor Victim 9

Around 2016, the defendant contacted an approximately fourteen-year-old girl, Minor Victim 9, over social media and coerced her into sending sexually explicit images of herself to him. *Id.* ¶ 47. In October 2019, the defendant again contacted Minor Victim 9 and attempted to coerce her into creating and sending additional sexually explicit images to him, threatening to post the previous images if she did not comply with his new demands. *Id.* Minor Victim 9 told him to "stop harassing me, that was three years ago, I really don't understand why you're still on this." *Id.* The defendant persisted, and Minor Victim 9 threatened to contact law enforcement. *Id.* In an

effort to dissuade the victim from reporting, the defendant told the minor that *she* would be charged with "'creation and distribution' of child pornography" if she came forward. *Id.* And undeterred from his pursuit of child pornography, the defendant continued to promise Minor Victim 9 that he would stop harassing her if she complied with his demands to make two explicit videos. *Id.* Sexually explicit images of Minor Victim 9 were ultimately found in an encrypted portion of the defendant's phone. *Id.* ¶ 47.

> I.     Minor Victim 10

Around late 2019 to early 2020, the defendant obtained sexually explicit images of Minor Victim 10 and contacted Minor Victim 10's sister over social media, suggesting that he would make the content available to others if she did not comply with his demands. *Id.* ¶¶ 48-49. A sexually explicit image of Minor Victim 10—taken when she was in seventh grade—was ultimately found in an encrypted portion of the defendant's phone. *Id.* ¶ 49. Minor Victim 10 reported that she had been the victim of a social media account hacking, and that nude photographs of herself that she had saved on her phone were thus made available to others. *Id.*

> J.     Minor Victim 11

From 2016 through January 2020, the defendant exploited and extorted Minor Victim 11. The defendant first contacted Minor Victim 11 via social media when Minor Victim 11 was fourteen years old, and the defendant led Minor Victim 11 to believe that he was the same age. *Id.* ¶ 51. The defendant deceived Minor Victim 11 into sending a pornographic video of herself to him, and then threatened to share the content if she did not produce and send him additional videos and images. *Id.* The defendant's threats continued throughout her high school years, and she sent him another video. *Id.*

In January 2020, the defendant sent one of the pornographic videos to Minor Victim 11's friend's cousin and asked if the cousin had additional images or videos of Minor Victim 11. *Id.* The defendant thereafter reinitiated contacting Minor Victim 11 directly. *Id.* Sexually explicit images of Minor Victim 11 were ultimately found in an encrypted portion of the defendant's phone. *Id.* ¶ 52.

K.      Minor Victim 12

The defendant contacted Minor Victim 12 over social media in November 2019, sending her nude photographs of herself that Minor Victim 12 had previously sent only to her (ex)boyfriend, and asked her to send him pornographic images of herself engaged in intercourse and fellatio. *Id.* ¶ 54. Minor Victim 12 told the defendant that she was only fifteen years old, to which the defendant responded that he did not care. *Id.* Minor Victim 12 refused to send him explicit images and blocked his account. *Id.*

The defendant thereafter hounded Minor Victim 12 through other social media accounts, offering her compensation if she would send him nude photos of herself, and contacted at least four of Minor Victim 12's classmates in an effort to obtain more sexually explicit images of her. *Id.* The defendant also sent the nude photos of Minor Victim 12 to at least two of those classmates, including Minor Victim 6. *Id.* Sexually explicit images of Minor Victim 12 were ultimately found in an encrypted portion of the defendant's phone. *Id.* ¶ 55.

L.      Minor Victim 13

The defendant contacted Minor Victim 13 over social media and, as with the other victims, referenced sexually explicit images he had of her and suggested that he would share the content with others if she did not comply with his demands. *Id.* ¶ 56. Sexually explicit images of Minor

Victim 13, taken when she was no older than fifteen years old, were ultimately found in an encrypted portion of the defendant's phone. *Id.*

        M.     Minor Victim 14

The defendant began exploiting and harassing Minor Victim 14 in 2010, when she was thirteen years old. *Id.* ¶ 58. The defendant contacted her over social media and told her that he was twenty years old and in the military. *Id.* He requested that she take and send him nude photos of herself, and she complied with his demands beginning when she was fifteen years old. *Id.* The defendant then threatened to share the photos with other people if she refused to send him additional photos. *Id.* She ultimately took and sent him hundreds of nude photos, yet Minor Victim 14 was subsequently informed by an unknown person that nude images of herself had been posted online. *Id.*

The defendant also contacted Minor Victim 14's ex-boyfriend seeking explicit images of her. *Id.* In October 2019, the defendant contacted one of Minor Victim 14's friends in an attempt to obtain explicit photos and videos of Minor Victim 14; the two discussed watching videos of Minor Victim 14 engaged in intercourse with her boyfriend, and the defendant requested that he be sent a screenshot of the next video. *Id.* ¶ 57. When asked his age preference, the defendant responded that "17 16 years old is what I want." *Id.*

In March 2020—a decade after his torment of her began—the defendant again contacted Minor Victim 14 (who was by now an adult), telling her that "if she wanted 'this stuff to go away' she would have to 'do what [he said] for an hour.'"  *Id.* Sexually explicit images of Minor Victim 14 were subsequently found in an encrypted portion of the defendant's phone. *Id.* ¶ 59.

N.      Additional Minor Victims

Forensic examination of the encrypted portion of the defendant's phone also revealed that the defendant was part of an online group where offenders traded child pornography, including depictions of the sexual abuse of toddlers. *Id.* ¶ 67. On April 9, 2020, the defendant had posted to the group asking if anyone had images of two specific girls he had observed on a live-streaming video application who appeared to be between 8 and 10 years old. *Id.* The defendant also traded child pornography with other social media users, *id.* ¶¶ 64, 68, and sent exploitative, threatening messages to still-unidentified but suspected minors. *See id.* ¶ 69 (telling a suspected minor "I've missed ya[,] I wanna see u naked," and "You're going to cum for me, like the good little whore you are").

In total, law enforcement recovered approximately 350 photographs and 84 videos of suspected child pornography from the defendant's devices. *Id.* ¶ 70. Those files were forwarded to the National Center for Missing and Exploited Children ("NCMEC"), in an effort to identify any additional victims. *Id.* NCMEC subsequently was able to identify 32 other minors depicted in the child pornography files the defendant possessed. *See generally id.* ¶ 90.

**III.     Procedural History**

The defendant was arrested and charged by complaint with one count of production of child pornography on June 11, 2020. *Id.* ¶ 1. On October 23, 2020, a three-count information was filed, charging the defendant with one count of production (and attempted production) of child pornography (Count One), one count of distribution of child pornography (Count Two), and one count of possession of child pornography (Count Three). *Id.* ¶ 2. On November 5, 2020, the defendant waived indictment and pleaded guilty, pursuant to a plea agreement, to the three counts of the information. *Id.* ¶ 3; ECF Nos. 34-37.

In the plea agreement, the parties stipulated that, because the offense in Count One involved the sexual exploitation of more than one minor, the Sentencing Guidelines should be applied as though the exploitation of each minor had been contained in a separate count of conviction. PSR ¶ 6 (citing U.S.S.G. § 2G2.1(d)(1)); ECF No. 36, at 4. The parties further stipulated as to the base offense level and specific offense characteristics for each of the production victims under § 2G2.1. *See* PSR ¶ 6; ECF No. 36, at 4-6 (reflecting offense levels ranging from at least 34 to 40 for Minor Victims 1, 2, 4, 6, 7, 9, and 11). The parties also agreed that Counts Two and Three are governed by § 2G2.2 and that the base offense level plus specific offense characteristics for these grouped counts is at least 31. *See* PSR ¶ 6; ECF No. 36, at 6. The parties specifically acknowledged, however, that "[a]ny stipulation on a Guidelines provision does not limit the parties' arguments as to any other Guidelines provisions." PSR ¶ 8; ECF No. 36, at 7.

The PSR thereafter correctly calculated the defendant's total offense level as a 43, PSR ¶ 136, having correctly calculated that the adjusted offense level for the grouped distribution/possession counts is a 47 and recognizing that a total offense level over 43 is treated as a level 43:

| Guideline | Offense Level |
|---|---|
| Base offense level (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| The material involved a prepubescent minor or a minor who had not attained the age of twelve years (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| The defendant distributed to a minor that was intended to persuade the minor to engage in prohibited sexual conduct (U.S.S.G. § 2G2.2(b)(3)(B)) | +7 |
| The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, or the sexual abuse or exploitation of an infant or toddler (U.S.S.G. § 2G2.2(b)(4)) | +4 |
| The defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor (U.S.S.G. § 2G2.2(b)(5)) | +5 |

| The defendant used a computer or an interactive computer service for the possession, receipt, or distribution of the material (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| The offense involved 600 or more images (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **ADJUSTED OFFENSE LEVEL** | **47** |

PSR ¶¶ 99-105.[2] The PSR also properly calculated the defendant's criminal history category as a

I, *id.* ¶ 140, resulting in a Guidelines sentence of life imprisonment capped by the statutory

maximum of 720 months (*i.e.*, 30 years for Count One + 20 years for Count Two + 10 years for

Count Three). *Id.* ¶ 171.

## SENTENCING ANALYSIS

As this Court is well aware, to determine the appropriate sentence, the Court must consult

both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). Although they are advisory,

"a sentencing court is still required to 'consult [the] Guidelines and take them into account when

sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *United States v.

Booker*, 543 U.S. 220, 264 (2005)). Thus, a sentencing court must first calculate the applicable

Guidelines range after making the appropriate findings of fact. *United States v. Hughes*, 401 F.3d

540, 546 (4th Cir. 2005). Relying on that range as "the starting point and the initial benchmark,"

the sentencing court must then "consider all of the § 3553(a) factors" before imposing a sentence.

*Gall v. United States*, 552 U.S. 38, 49-50 (2007).

---

[2] The PSR also correctly included a 2-level upward adjustment for obstruction of justice, *see* PSR ¶ 108, a 5-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct, *id.* ¶ 133, and a 3-level decrease for acceptance of responsibility, *id.* ¶¶ 134-135. The defendant's Total Offense Level was thus a 51, reduced to the maximum recognized level of 43.

## I.      The 18 U.S.C. § 3553(a) Sentencing Factors Warrant a 720-Month Sentence

In this case, careful consideration of the § 3553(a) factors confirms that the correctly calculated Guidelines sentence of 720 months' imprisonment—followed by lifetime supervised release, as well as restitution, forfeiture, and the special assessments discussed below—is the appropriate sentence for this prolific terrorizer of children.

### A.      The Nature and Circumstance of the Offenses

Child pornography is a vile crime whose horror cannot be fully captured in words. As the Victim Impact Statements submitted in this case show, and as "[l]ong-term studies" confirm, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). "When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated." *Id.* at 1208. "Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *United States v. Ferber*, 458 U.S. 747, 759 (1982)); *accord United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012).

Indeed, "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children, "who must live

13

with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

It is thus unsurprising that when one "[m]ention[s] the term [child pornography] to your average American[,] . . . he responds with immediate disgust and a sense of unease." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *aff'd*, 669 F.3d 723 (6th Cir. 2012). But as the *Cunningham* court warned, "once it enters the legal system, child pornography undergoes sterilization . . . far beyond properly removing emotion from sentencing decisions." *Id.* "Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement." *Id.*

Mindful that the written excerpts below cannot fully capture the suffering the defendant's crimes have inflicted on his victims, the Government believes it important to highlight here at least some of the destruction the defendant has caused, in the victims' (and their parents') own words:

<u>Mother of Minor Victim 1</u>

Our daughter was a victim of Filippo Parlagreco and this experience has had a major impact on her life and our life as a family. He did not simply impersonate someone else and convince a vulnerable minor to send a picture of herself to him. He manipulated her, coerced her and tormented her. . . . [S]he was riddled with panic attacks and was scared to get off of her school bus . . . because she was convinced that he was going to find her and abduct her. . . .

I cannot adequately explain the emotional impact this experience had had on our daughter and on our family. She was hopeless that anyone would ever be able to stop him. . . . She may heal but she will never forget and neither will any of the other victims. A trauma like this stays with you forever. . . .

<u>Minor Victim 2</u>

. . . I am 12 years old. . . . One of the biggest impacts I have had is handling overwhelming feelings of anxiety, worry, stress, or fear, through self-harming

14

habits. . . . I am more fearful of grown men, including when they are in safe environments such as school, home, church, etc. I have trouble trusting new people. I am fearful of making new friends, and I am always nervous about who has seen my photos. . . . Since being contacted by the police regarding this defendant, . . . a stranger . . . sent me the original photos of myself that I provided to the defendant, showing me how far they have already spread. . . . The effects . . . will be ongoing throughout my highschool and adult development.

<u>Minor Victim 7</u>

. . . I believe that the one thing in this world that is truly our own, is our bodies. You can buy all the goods in the world, but the one thing that will truly be with you from the day that you are born to the day that you die is your body. My body was taken from me.

. . . He turned an innocent young girl into someone who is terrified of the world. My home felt unsafe because I constantly felt like there were eyes watching me. . . . For years, I was living my life with the belief that I was being watched. . . .

The reason I did not go to the police all those years ago was that I was terrified of telling my parents. How does a little girl tell their parents something that they know . . . will make them see their daughter in a way no parent should see?  In the end, my parents were shown the pictures and asked to confirm their little girl's identity through her nearly naked body. I should have gone to the police all those years ago. Imagine how many other little girls I would have saved. . . . [T]his is my biggest regret. I am so sorry.

<u>Minor Victim 11</u>

The fear I went through not knowing if this man would be caught. He catfished me into thinking we went to highschool together. Tormented me for over 4 years[,] scaring me into sending more or else he would post them. He's the reason that I couldn't sleep at night. The fear that he would post them and my life would be over; forget having a social life or a career. He would prey & threaten . . . .

<u>Minor Possession Victim A</u>

. . . I have tried over the years to overcome my past and not let it determine my future, but perpetrators and stalkers still find a way to view this filth. . . .

. . . I have been unable to be a normal child growing into a normal teen who could come and go and just enjoy being young. . . . I, as a victim, was being bullied over a crime that robbed me of my childhood. It makes me extremely angry at the

individuals who view and distribute this because they are fueling this sick obsession. . . .

Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover. . . .

Minor Possession Victim B

What has happened to me has affected my life dramatically. Everyday I get reminded of it, by hearing it on the news and just knowing people like that out there scares me to death. . . . Knowing that some sick person is looking at me on the computer everyday in a way that no one should look at a kid makes me feel violated . . . . Inside I'm really hurt. I am a real person.

Parent of Minor Possession Victim C

. . . [She] is reminded of her experience on a daily basis. . . . I have heard [her make] statements like, . . . "they say we are better than animals, well animals don't do that." Statements like this I have no comment. What can I say?  She is right. . . .

We have all been affected by this violation. Financially, we were destroyed. . . . There are emotional scars that can not be healed. . . .

The overall impact this violation has had, will have, on these children are countless. They have a lifetime sentence of emotional destruction that cannot be reversed. . . .

. . . Every time her image is viewed, she is a victim all over again. . . . Because in a sick contorted way the individual who is viewing this, is taking pleasure in someone else's pain. By viewing this, the perpetra[tor] is supplying the demand.

### B.       The History and Characteristics of the Defendant

Although the defendant has no prior convictions, his history and characteristics are

alarming and counsel in favor of the Guidelines sentence. The defendant targeted the most

vulnerable members of society—children—using an arsenal of premeditated tactics. These ranged

from misrepresentation of his identity, exploitation of his military history, and promises that he

16

could be trusted not to share the victims' most sensitive images with other individuals and/or would pay the victims, to outright threats, blackmail, and instillation of terror in his victims. *See supra.*

Further compounding his danger to the public, the defendant used his technological savvy—including encryption—in an effort to avoid law enforcement detection, and he facilitated the exploitation of children by countless other offenders through his trading of child pornography in online communities of child sex offenders. *See supra*.

Moreover, the defendant's predatory behavior goes well beyond the dozens of identified and unidentified victims of his counts of conviction. It dates back decades, to when he was in middle and high school. *See* FBI Report of Investigation (June 16, 2020), attached as Ex. 2 (sealed) (summarizing interview of defendant's classmate who reported that he became obsessed with a few girls at a time, took unwelcome photos of female classmates, stole her underwear from the locker room and cut her bras in half, and followed her around town).

In sum, the defendant's offenses of conviction were by no means an isolated instance of law-breaking. Rather, they were part of a deeply entrenched pattern of sadistically victimizing the most defenseless members of society. All these factors weigh strongly in favor of the Guidelines sentence.

### C. The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

"There can be no keener revelation of a society's soul than the way in which it treats its children." *Cunningham*, 680 F. Supp. 2d at 847 (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). To reflect the seriousness of this crime, those who participate in this evil must be punished severely. *See United States v. Morace*, 594 F.3d

340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely").

Indeed, the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive. The Government requests that the Court impose a sentence that reflects the full impact of the crime on the victims, and that considers the views of the victims who have come forward with statements, including the following (all as in original):

### Mother of Minor Victim 1

. . . We are convinced that, if given the opportunity, he will repeat this and continue. We are concerned that if he ever leaves the prison system or is given access to internet and social media, he will contact my daughter again and will try to repeat this offense again with other minors in the future. This is not a simple crime, this is a trauma that these girls have gone through, it has effected their lives, it has gifted them with trust issues and panic attacks and has made them question the worth of their own lives. . . . [I]t is a criminal offense that has made our daughter question whether she wants to live. . . . For these girls to begin living the lives that they deserve we ask that you sentence him to the maximum amount possible.

### Minor Victim 2

. . . If I had my own choice, I would like to see the maximum sentence happen to this person. The effects this has caused on my life are lasting . . . .

### Minor Victim 11

. . . I hope he is put away for so long that he can't do this to anyone else. No one should have to go through what he subjected me to. He is a true threat to society and he should never be allowed in any social media platform – ever again!

### Minor Possession Victim A

. . . These people need to be punished for taking away a major part of my childhood and sense of security.

A Guidelines sentence in this case reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.

> **D.      The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment**

The sentence in this case must constitute a loud message to potential sexual offenders that severe consequences will result from such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

Distressingly, the market for child pornography has continued to grow, and to become more depraved, in recent years. *See, e.g.*, *U.S. Sent'g Comm'n Hr'g on the Child Pornography Guidelines* 1-2 (Feb. 15, 2012) (statement of James M. Fottrell, Steve DeBrota & Francey Hakes, Dep't of Justice), *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215/Testimony_15_Hakes_DeBrota_Fottrell.pdf. That depravity is evident in this case. The need for effective deterrence through a severe sentence here is therefore essential.

A Guidelines sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003); *see also Cunningham*, 680 F. Supp. 2d at 855-56, 859-60 (discussing recidivism studies).

It is hard to imagine that anyone thinks this defendant has a low risk of recidivism. And even if a defendant *could* be described as a "low risk" to recidivate, "[a] low risk is not the same as no risk." *Irey*, 612 F.3d at 1216-17. "Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *Id.* at 1217; *see also Garthus*, 652 F.3d at 720 ("The sadistic nature of much of the child pornography consumed by the defendant is another reason to worry about his being on the loose.").

Though no study can predict whether the present defendant will or will not choose to return to his life of sadistic exploitation, this particular defendant's history and characteristics suggest that such concerns are well-founded. As noted above, the defendant's charged conduct lasted years, indicating an ongoing sexual interest in children and disregard for the law. He was aware of the illegality of his conduct, his accounts were repeatedly blocked by his victims, he was explicitly told to stop his predatory behavior, and he was even threatened with reports to law enforcement. None of this deterred him. Instead, he mocked those who warned him that his behavior was wrong, continued to create new accounts to track down and torment his victims, and threatened at least one child with criminal prosecution if she went to the police. *See supra*. In sum, the evidence shows that the defendant is a pedophile who gets sadistic pleasure from the exploitation, with innocent children repeatedly suffering the consequences for his self-indulgence.

"Nor does the fact that [the defendant] will be subject to restrictions and supervised release [if] he gets out of prison offer any guarantee that he will not commit any crimes." *See Irey*, 612 F.3d at 1215 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216. The Guidelines term of incarceration is thus warranted.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

A Guidelines sentence would also avoid unwarranted disparities and be sufficient but not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a). Notably, district courts within this Circuit have repeatedly ordered, and the Fourth Circuit has repeatedly affirmed, sentences tantamount to life, at the statutory maximum, and/or otherwise decades-long, for similar conduct. *See, e.g.*, *United States v. Mills*, 850 F.3d 693, 696, 700 (4th Cir. 2017) (45 years for manufacturing child pornography with ten minors); *United States v. Dowell*, 771 F.3d 162, 164-65, 168-69 (4th Cir. 2014) (80 years for production with two prepubescent victims); *United States v. Hallman*, 549 F. App'x 147, 148 (4th Cir. 2013) (120 years for production with multiple victims); *United States v. Davison*, 492 F. App'x 391, 393 (4th Cir. 2012) (life sentence for production with 1 victim, where prior conviction for attempted rape as teenager); *United States v. Mattocks*, 408 F. App'x 717, 718 (4th Cir. 2011) (50 years for manufacturing and transporting child pornography); *United States v. Thompson*, No. 8:17-cr-195 (D. Md. 2019) (ECF Nos. 5, 125) (420 years for production with 3 prepubescent victims).

So have courts in other jurisdictions. *See, e.g.*, *United States v. Curuchiche*, 712 F. App'x 564 (6th Cir. 2018) (50 years for production involving 1 prepubescent victim); *United States v. Belanger*, 683 F. App'x 38 (2d Cir. 2017) (40 years for enticing ten-year-old to send sexually explicit videos to defendant); *United States v. Bailes*, 665 F. App'x 340 (5th Cir. 2016) (135 years for production, distribution, receipt, and possession, as well as abuse of 2 children); *Irey*, 612 F.3d at 1220-21 (providing extensive string cite of cases affirming sentences of 30 to 140 years for production offenses).[3]

---

[3] *Cf. United States v. Strieper*, 666 F.3d 288, 296 (4th Cir. 2012) (35-year Guidelines sentence for distribution/receipt, possession, and attempted enticement); *Garthus*, 652 F.3d at 717, 721-22 (30-year sentence for *non*-production offenses for 44-year-old offender who previously

Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant. The cited cases simply stand for the proposition that a Guidelines sentence of 60 years' imprisonment is reasonable for this defendant. And as explained above, such a sentence would be well-deserved.

## II.     Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).  Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's offense is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and § 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *Morace*, 594 F.3d at 351 (citations omitted).

Based on an assessment of these factors, the United States requests that the Court impose a lifetime of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d)

---

molested child); *United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011) (above-Guidelines sentence of 30 years for attempted receipt and possession, where defendant had "lifelong pattern of abusive behavior against minors").

for felons required to register under the Sex Offender Registration and Notification Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders. Given the defendant's longstanding, extensive, and relentless pursuit of children to exploit, *see supra*, a lifetime term of supervision is the only effective means to mitigate as much as possible the risk that he will reoffend, and also to provide him with steady access to the treatment and monitoring he will clearly require, if released into the community.

## III.   Restitution

Pursuant to 18 U.S.C. §§ 2259 and 3663, as well as the plea agreement, the defendant must pay restitution in the "full amount of the victims' losses." PSR ¶ 10; ECF No. 36, at 9-10. Pursuant to the plea agreement, the defendant also agreed that the Court may defer the imposition of restitution until after sentencing and to waive the requirement under 18 U.S.C. § 3664(d)(5) that the Court determine a final restitution amount no later than ninety days after sentencing. *Id.*

To date, the United States has received requests for restitution from Minor Victim 1 and Minor Possession Victim A. Minor Victim 1 has requested $2,144.82 to cover counseling costs incurred as a consequence of the defendant's crimes against her, and documentation of those expenses has been provided to the defense and to the Probation Officer. The United States therefore requests that the Court order a judgment of restitution to Minor Victim 1 in the amount of $2,144.82. *See generally* 18 U.S.C. §§ 2259, 3663A, 3664.

Minor Possession Victim A has requested restitution to help cover thousands of dollars in unreimbursed expenses including counseling, and a breakdown of those expenses has likewise been provided to the defense and to the Probation Office. Under 18 U.S.C. § 2259(b)(2)(B), Minor Possession Victim A is entitled to at least $3,000 in restitution from this defendant, and the United States believes that such an award is a reasonable resolution under all the circumstances. The

United States thus requests that the Court order a judgment of restitution to Minor Possession Victim A in the amount of $3,000.

## IV.    Forfeiture

The United States will submit a consent order for forfeiture of the devices identified in the plea agreement and requests that the Court order such forfeiture as part of the judgment. *See* PSR ¶ 13; ECF No. 36, at 10-12.

## V.    Mandatory Special Assessments Under 18 U.S.C. §§ 2259A(a)(3) & 3013

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. The Act instructs that, in addition to any restitution or other special assessment, courts "*shall* assess . . . not more than $50,000 on any person convicted of a child pornography production offense." 18 U.S.C. § 2259A(a)(3) (emphasis added). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* §§ 2259(d) & 2259B, and shall be paid in full after any special assessment under § 3013 and any restitution to victims of the defendant's offense, *see* § 2259A(d)(2). In determining the amount to be assessed under § 2259A, courts should consider the sentencing factors set forth in § 3553(a) and the guidance in § 3572 for the imposition of fines. § 2259A(c).

Given the gravity and extensiveness of the defendant's offense conduct and the relatively little compensation requested of the defendant by his victims for restitution purposes, the United States respectfully requests that the Court impose a reasonable special assessment under this statute, in addition to the $300 mandatory special assessment for his felony convictions pursuant to 18 U.S.C. § 3013.

## **CONCLUSION**

The defendant is a serial sexual predator who has left a trail of victims in his wake. For the reasons stated herein, the United States respectfully requests that the Court impose the Guidelines term of incarceration of 720 months, a lifetime of supervised release, restitution in the amount of $5,144.82, forfeiture of the defendant's electronic devices, a special assessment under 18 U.S.C. § 2259A, and a $300 special assessment under 18 U.S.C. § 3013.

Respectfully Submitted,

Raj Parekh
Acting United States Attorney

By: _____/s/_____
Jonathan Keim
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: jonathan.keim@usdoj.gov

Jessica L. Urban
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20005
Phone: (202) 353-4146
Jessica.Urban@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

I further certify that on February 26, 2021, I sent a copy of the foregoing and the accompanying exhibits via electronic mail to counsel of record and the U.S. Probation Officer assigned to this matter:

> Kelly Smihal
> United States Probation Office
> Email: Kelly_Smihal@vaep.uscourts.gov

Respectfully Submitted,

Raj Parekh
Acting United States Attorney

By: _____/s/_____
Jonathan Keim
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: jonathan.keim@usdoj.gov