VIRGINIA:

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF VIRGINIA - ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) CASE NO.: 1:20-mj-155 |
| | ) |
| | ) |
| FILIPPO PARLAGRECO, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Filippo Parlagreco, by counsel, Blair D. Howard, Esquire and files the Defendant's Sentencing Memorandum.

Pursuant to Title 18 §3553, Imposition of a Sentence, the Court must first determine the accurate calculation of the Guidelines Range, treat the Guidelines as advisory, and then consider the factors under Title 18 §3553 (a), before pronouncing sentence. Gall v US, 552 US 38, 51, 128 S. Ct. 586, 169 L3d 2d 445 (2007).

SUMMARY OF FACTS RELATED TO CIRCUMSTANCES OF THE OFFENSE



LAW OFFICES
HOWARD,
CLARK &
HOWARD

7 HOTEL STREET,
WARRENTON, VA 20186

TELEPHONE:
(540) 422-0100

FAX:
(540) 422-0099

EMAIL:
INFO@HCHLAWVA.COM

The defendant in this case requested sexually explicit images from minors, including girls under the age of 12 and girls under the age of 16. When some declined to send additional images, he threatened to expose the images he had received to their friends, post them on the internet, and told the girls they would get in trouble if they reported him to law enforcement. Despite his admitted behavior, the defendant never sent any masochistic or sadistic images to any of these girls, and never suggested that they pose in any sadistic or violent activity. He never attempted to arrange a meeting with any of the girls to whom he communicated. The sadistic images found on his computer were received by him in exchange for pornography with other "collectors." There was no evidence that Mr. Parlagreco intended

to receive financial gain throughout his activities in child pornography.

When the investigators came to interview him, he voluntarily and truthfully answered their questions, at least in part (page 20 of the presentence report). At the conclusion of the interview, upon admitting to the offenses, he provided the investigators with his online account information and authorized law enforcement to take over his accounts to use as they saw fit.

With respect to Acceptance of Responsibility, he timely agreed to plead guilty and told his probation officer that he accepts full responsibility for his actions. The probation officer noted in the presentence report on (page 22, paragraph 93)

> Ordinarily, conduct that results in an enhancement under 3C1.1 (Obstruction or Impeding the Administration of Justice) would indicate that a Defendant had not accepted responsibility for his criminal conduct and was therefore, not deserving a reduction in his offense level pursuant to §3E1.1. There may, however, be extraordinary cases in which adjustment under both section 3C1.1 and section 3E1.1 may apply. Given that the conduct that resulted in the enhancement under 3C1.1 occurred during the commission of the offence, and prior to law enforcement involvement, and the defendant has since pleaded guilty, pre-indictment; saving the Government and the Court's resources and releasing the victims from having to testify at a trial, the probation office believes this is an extraordinary circumstance, in which both §3C1.1 and §3E1.1 would apply.

## HISTORY AND CHARACHTERISTICS OF THE DEFENDANT

The Defendant has no criminal history as a juvenile, or as an adult, as reported in the Pre-Sentence Report. His total criminal history is zero, and therefore, he fits into category 1 under the Guidelines. In addition, the Defendant has no other pending charges and no other arrests.

With respect to family history, his mother separated from his father and since has

remarried Ted Bullard. While the defendant did communicate with his biological father by email at some point, that has stopped. The defendant has had no other contact with his biological father for at least 10 years. The defendant's mother, Paola, and other family members have written letters reflecting their observations of Mr. Parlagreco growing up. These combined letters are attached hereto and marked as EXHIBIT 1 (these letters are not all currently endorsed; Counsel has requested signatures from authors of all letters and will submit endorsed letters as they are received).

With respect to the Defendant's physical condition at the present time, Mr. Parlagreco suffers from sleep apnea, shoulder pain, and knee pain, all of which are service related (see Page 28 of the presentence report). These injuries will be addressed separately in this memorandum.

## NAVAL CAREER

Mr. Parlagreco enlisted in the Navy in the year 2003 and served until he was medically discharged in 2007. During his 4 years in the Navy, he was deployed to the Arabian Sea, the Persian Gulf, and spent 10 months off the coast of Africa. Since his release from the Navy, he has been treated at the VA Medical Center in Martinsburg, West Virginia. As stated on pages 28 and 29, paragraph 153, of the presentence report,

> according to the Department of Veteran's affairs, the defendant has been under the care of the Martinsburg VA Medical Center, in Martinsburg, West Virginia. The defendant is a 60% service connected (OEF) Combat Veteran and was assigned to primary care in the post 9/11 TCM (Transition and Care Management) clinic where he was last seen in May of 2018 for left shoulder pain. Records from that visit indicate the defendant suffered two injuries during his service in the Navy. The fist occurred when his foot became caught in cargo netting, and he flipped backwards and struck his head. The second occurred when a helicopter, in which he was riding, landed hard during in heavy seas, causing the defendant to

> hit his head on the side of the helicopter. The defendant was diagnosed with possible mild traumatic brain injury (TBI) due to a history of minor concussion as a result of these events. His treating physician indicated that the injuries would likely not result in long-term consequences and the defendant's symptoms were more likely due to sleep disorder and possible depression.

According to the Presentence Report (page 29, paragraph 154), the defendant has reported a history of depression and anxiety, which began at the time he left the Navy. He noted that his symptoms "came in waves" and "were usually triggered by stressors, such as finding work." Mr. Parlagreco advised that he had an initial interview with a psychologist at the VA in 2015 but did not receive any mental health counseling. Since his arrest, he has been meeting on a regular basis with a therapist, Leslie Martin. A report from Ms. Martin is attached hereto and marked as EXHIBIT 2.

The defendant's employment history in recent years is described as sporadic. It involved sales jobs, and security guard work.

With respect to Mr. Parlagreco's termination from the Navy it is reported on page 30, paragraph 166, of the pre-sentence report,

> From November 13, 2003 to September 18, 2007 the defendant served as a parachute rigger in the United States Navy. Records gathered by law enforcement during the investigation into the incident offence indicate the defendant separated from the Navy after being unable to meet established physical standards and is categorized as a disabled veteran.

The defendant currently receives benefits from VA of $1000 per month.

## GUIDELINES COMPUTATION

Pursuant to the Plea Agreement, the United States and the Defendant agreed to recommend to the Court a number of stipulations with respect to the Guidelines. The parties

recommend that Count 1, Production and Attempted Production of pornography, would be governed by §2G2.1. Under §2G2.1(d)(1), because the offense involved the exploitation of more than one minor, under Chapter 3, Part D (multiple counts), the guideline shall be applied as if exploitation of each minor had been contained in separate count of conviction. Importantly, under §2G2.1, Specific Offense Characteristics, the Guidelines provide for multiple enhancements, such as, if the minor had not reached the age of 12 (4 levels), or had not reached 16 (2 levels), if the offense involved distribution (2 levels), if the offense involved knowing misrepresentation of person's identity, or use of computer (2 levels), and Obstruction of Justice (2 levels). (Page 22, paragraph 22 of the Pre-Sentence Report)

Under the Plea Agreement, the defendant pled guilty to 3 counts, Count 1 Production and Attempted Production, Count 2, Distribution, and Count 3, Possession. The defendant further stipulated in his agreement that the parties recommend applicable guidelines offense levels in Count One, would be governed by §2G2.1. The Probation Office grouped Counts I, IA, ID and IF with Count 2 and Count 3 and, determined the base offense level for distribution was 22 under USSG §2G2.2(a)(2). The Specific Offense characteristics were determined by use of §2G2.2(b).

According to the calculations of the probation officer, the offense levels with enhancements resulted in a total of 43, or a life sentence. Based on the sentencing guideline manual, §5G1.1 (a) "Where the statutory authorized maximum sentence (720 months for all Counts) is less that the minimum of the applicable guideline range, the statutory authorized maximum sentence shall be the guideline sentence." The defendant does not challenge the Guideline calculation.

## RESTITUTION

Per request by the Government, the defendant agrees to pay restitution to the

identified victim described as "Tara" in the amount of $3,000, and to pay the identified victim described as "Minor Victim 1" in the amount of $2,144.82. The defense understands the Government must confirm these figures are appropriate with the victims.

Counsel has reviewed the victim statements with Mr. Parlagreco. With respect to victim 14, Mr. Parlagreco recalls first speaking with her around 2015. He had seen pictures of her on the internet. He did receive some pornographic pictures from victim 14 but not all pictures in his possession were sent by her. She told Mr. Parlagreco she was 18 but he does not know how old she was.

## THE FEDERAL COURTS CRITICISM OF §2G2.2 OF THE GUIDELINES

As the Court is aware, the Federal Sentencing Guidelines in Pornography cases have been criticized by the Federal Courts over the years. Counsel was shocked to learn of a 60-year guideline calculation. Mr. Parlagreco is a first offender and is 37 years of age. A 60-year sentence for the defendant is life. It is respectfully noted that there was no physical contact with any of the victims in this case, nor was there any attempt by Mr. Parlagreco to meet with or have sexual interaction with any of the victims. The defendant did not distribute or produce any pornographic images for financial gain. While Counsel is very aware of the severity of the obstruction to minor victims and the psychological consequences, counsel would point to defendant's candor and cooperation with the investigations and his 100% acceptance of responsibility with the Court. The defendant is embarrassed and ashamed of his conduct and knows he needs to be punished.

Counsel researched other cases to investigate any disparity in the Guideline Sentence recommended for Mr. Parlagreco and other defendants with similar history and background. As a result, it was determined that other Federal Courts have determined that the Federal Sentencing Guidelines, §2G2.2, are severely flawed. Specifically, the Courts have

suggested that the enhancements are inherent in most, if not all pornography cases. Counsel respectfully believes it is important to bring these matters to the Court's attention along with the Sentencing Commission's policy for Substantial Sentences for certain defendants.

### THE SENTENCING COMMISSION HAS RECOMMENDED SUBSTANTIAL SENTENCES FOR CERTAIN DEFNDANTS

Title 28 §991of The Federal Criminal Code provides the following at page 1540,

> (b) The purposes of the United States Sentencing Commission are to
> (1) establish sentencing policies and practices for the Federal criminal justice system that —
> (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United Sates Code

Under Title 28 §994, Duties of the Commission, the following is provided,

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants, in which the defendant is 18 years or older, and —
> (1) has been convicted of a felony that is —
>   (A) a crime of violence; or
>   (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)…
> (2) has previously been convicted of two or more prior felonies, each of which is —
>   (A) a crime of violence; or
>   (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)…
> (i) The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which, the defendant is —
> (1) has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions;
> (2) committed the offense as part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income;
> (3) committed the offense in furtherance of a conspiracy with three or more persons

        engaging in a pattern of racketeering activity in which the defendant participated in a managerial or supervisory capacity;

(4)    committed a crime of violence that constitutes a felony while on release pending trial, sentence, or appeal from a Federal, State, or local felony for which he was ultimately convicted; or

(5)    committed a felony that is set forth in section 401 or 1010 of the Comprehensive Drug Abuse Prevention and Control Act…

(j)  The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury. (Page 1540)

Mr. Parlagreco does not fall within any category under subparagraphs (h) or (i), which would qualify him for "maximum" or "substantial" imprisonment.

### GROBER AND DORVEE WITH RESPECT TO §2G2.2

With regard to cases critical of the pornography guidelines, Counsel cites the case of United States v. Grober, 624 F3d 592 2010. Mr. Grober pled guilty to six counts, including 2 counts of transportation of child pornography Title 18 USC 2252 A(a) (1), 3 counts of receiving child pornography 2252 A(a)(2)(A), and one count of possessing material containing images of child pornography 2252 (A)(a)(5)(B). A copy of the case is attached hereto and marked as EXHIBIT 3.

On a tip regarding child pornography, law enforcement agents executed a search warrant at Grober's home and discovered what was eventually determined to be approximately 1,500 images and 200 videos of child pornography among an even larger collection of adult pornography. In October 2006, the Federal Grand Jury returned an indictment against Mr. Grober. In September 2007, two weeks before scheduled trial, after

plea negotiations had broken down a superseding indictment was returned. Grober ultimately pled guilty to all six counts.

Under USSG §2G2.2(a)(2) Grober's base offense level, after grouping, was 22 with a criminal history category of 1, which resulted in a guideline range of 41-51 months of imprisonment. With the enhancements under §2G2.2, however, Groper's offense level increased to 40. The 18 levels of enhancements included: 2 levels for material involving pre-pubescent minors or minors under 12, 5 levels for distributing material to receive a thing of value but not pecuniary gain, 4 levels for materials portraying sadistic and masochistic conduct or other depictions of violence, 2 levels for the use of a computer and 5 levels for possessing more than 600 images of child pornography. After a 2 level downward adjustment for acceptance of responsibility under 3E1.1(a), Grober's offense level became 38 and his advisory guideline range became 235-293 months of imprisonment. The Government and defendant agreed the guideline range was correctly calculated.

The District Court in Grober, clearly troubled by the sentence of imprisonment and the guideline range produced, held hearings over 12 days between July and December 2008, listened to numerous witnesses including Douglass Bierman, a law professor proffered by Defense as an expert on the guidelines (over the government's objection) several mental health professionals, and the mother of two boys who had been sexually abused and featured in pornography found in Grober's collection.

With respect to the seriousness of the offense, the District Court considered the victim impact testimony given by the mother of the two boys abused in the images.

The District Court found several reasons why it believed §2G2.2 to be flawed at p. 598,

> The District Court discussed several additional reasons why it believed § 2G2.2 to be flawed. First, it found that most of the

enhancements are essentially inherent in the crime and, thus, apply in nearly every case. Special Agent Chase testified that, of the 180 investigations she had conducted, every one involved 600 or more images, the use of a computer, and a prepubescent minor, and eighty percent had at least one image depicting sado-masochistic conduct. When the enhancements are added to the base offense level of 22 — increased from 17 in 2004 — the Guidelines, in the Court's view, produced 'an outrageously high sentence.' *Id*. Second, the Court found that the enhancements promote sentencing disparities... *(emphasis added)*

The Court concluded that a prison sentence of 5 years, mandatory minimum sentence, affords adequate punishment and would send a clear message about how catastrophic the consequences are to those who become involved in child pornography. The Court found that based on the testimony of mental health professionals, Grober appeared at low risk of harm to society and there was little risk that he would physically abuse children in the future.

Finally, the Court concluded at page 599

...§3553(a)'s admonition that sentences be "sufficient but not greater than necessary", the Court found "as a matter of conscious" that any term of imprisonment above the five year mandatory minimum would be "unfair and unreasonable. Id at 411-12, *(emphasis added)*

The Government appealed the Court's decision and Grober cross appealed. The focus of the 3rd Circuit Court's opinion were the guidelines under §2G2.2. The Court cited the sentencing commission's report on the history of child pornography guidelines issued in October 2009, almost a year after Grober's sentence. The Court referenced the development of the guidelines, which had been substantially amended 9 times since 1987 and repeatedly highlighted the role Congress has played in these amendments. The Court noted numerous District Court cases across the country had,

similarly found § 2G2.2 flawed, *see, e.g., United States v. Diaz*, 720 F. Supp. 2d 1039, 2010 U.S. Dist. LEXIS 65979, 2010 WL 2640630 (E.D. Wis. 2010) (collecting

> cases); *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. McElheney*, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009); *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009), but so, too, has the Court of Appeals for the Second Circuit, *United States v. Dorvee*, 616 F.3d 174, 2010 WL 3023799 (2d Cir. 2010), *reh'g en banc denied* (2d Cir. Aug. 31, 2010). Also supporting the District Court's conclusions is, among other reports, the recently issued Sentencing Commission's Report on the history of the child pornography Guidelines, an extensive and extraordinarily thorough study, indeed. (page 604)

The Third Circuit noted that in 2003, Congress, without seeking any input from the Commission, passed the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT ACT). The passage of this act brought significant changes to child pornography statutes and guidelines, including the first and only time to date Congress correctly amended the guidelines.

> The Court, citing Dorvee 516 F3d 174, at page 605 of it's opinion,
>
>> ...the former United States Attorney for the Eastern District of New York described the statute as "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress. US v Dorvee 616 Fed 174 2010... (quoting Alan Vinegrad, *The New Federal Sentencing Law*, 15 Fed Sentencing Report 310 at 315 (June 2003).

The Grober Court noted the PROTECT Act added the "image table" to both G2.2 and G2.4, which raised the offense levels based on the number of images at issue, ranging from a 2-level increase for 10 images, to 5 level increase for 600 or more images. In addition, the Act called for a 4-level increase for material portraying sadistic and masochistic conduct or other depictions of violence, a 5-year mandatory minimum sentence for receipt and trafficking and raised the statutory maximum from 15 to 20 years for receipt and trafficking. Finally, the act raised the penalty from 5 to 10 years for possession.

Effective November 1, 2004, the Commission amended the guidelines consolidating §2G2.4 into §2G2.2 in response to the new minimum and maximum penalties set by Congress. The Commission set higher base offense levels for possession increased (from 15 to 18) and trafficking distribution increased (from 17 to 22).

The third Circuit then made following statement at page 606, 607,

> it bears mention, as well, that the Commission recently surveyed federal district court judges regarding their experience with and opinions of, inter alea, the child pornography Guidelines and found widespread dissatisfaction with §2G2.2 United States Sentencing Commission, *Results of Survey of United States District Court Judges January 2010 through March 2010 (June 2010)* available at ttp://www.ussc.gov/Judge_Survey/2010/JudgeSurvey_2 01006.pdf. Seventy percent of responding judges — and only judges who had sentenced defendants after Kimbrough and Gall were to respond to the questions with respect to section 2G2.2 —reported that the Guidelines range for possession was too high, 69% said that the range for receipt was too high, and 30% believed that the range for distribution was too high.

The Third Circuit again, revisited Dorvee, which held, "…that §2G2.2 is 'fundamentally different' from other Guidelines and unless it is 'applied with great care, can lead to unreasonable sentences that are inconsistent with what section 3553 requires'". 616 Fed 3rd 174 2010.

The Grober Court at page 607 of its opinion, noted the following language from Dorvee:

> The enhancements 'cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases.' *Dorvee*, 616 F.3d 174, 2010 WL 3023799 at *10. The *Dorvee* Court noted, as did the District Court here, that many of these enhancements apply in almost all cases. *See id.* (noting that, of all the § 2G2.2 sentences imposed in 2009, 94.8% involved an image of

> a prepubescent minor, 97.2% involved a computer, 73.4% involved an image of sadistic, masochistic, or otherwise violent conduct, and 63.1% involved 600 or more images); *see also* United States v. Tutty, 612 F.3d 128, 132 (2d Cir. 2010) (noting that 96.6% of offenders sentenced under § 2G2.2 in 2009 received an enhancement based on the number of images possessed). Thus '[a]n ordinary first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months, rapidly approaching the statutory maximum, based solely on sentencing enhancements that are all but inherent to the crime of conviction.' Dorvee, 616 F.3d 174, 2010 WL 3023799 at *10. Because the Guidelines do not distinguish between these 'run-of-the-mill' offenders and the most dangerous offenders, the 'result is fundamentally incompatible with § 3553(a).' *Id.* The *Dorvee* Court further cited as proof of the "irrationality" of § 2G2.2 that a defendant who actually engages in sexual conduct with a minor may be subject to a lower Guidelines range than one who distributes child pornography. *Id.*

The Grober Court concluded that this "eccentric Guideline of highly unusual provenance" is not worthy of the weight afforded to other Guidelines, 616 F3d 174 app 12 See also Tutty 612 F3d at app 133, (vacating 168 months within Guideline sentence for receipt of child pornography and directing district court on remand to consider the policy consideration identified in Dorvee). US v Stone, 575 F3d 83, 97 (1st Ct 2009). ("We wish to express our view that §2G2.2 is), in our judgment, harsher than necessary… First-offender sentences of this duration are usually reserved for crimes of violence and the like.")

## RISK OF RECIDIVISM

The United States Sentencing Commission, is March 2016, published the Report on Recidivism Among Federal Offenders: A Comprehensive Overview. This report evaluated the risk of recidivism of federal prisoners surveyed and provides a broad view of findings from the United States Sentencing Commission study of recidivism of federal offences. Key findings on page 10 of the Commission's report are:

> A federal offender's Criminal history was closely related with recidivism rates. Rearrest rates range from 30. 2 % for offenses with zero total criminal history points to 80.1% percent of offenders in the highest Criminal History Category, VI.

The United States Sentencing Commission, in 2017, published <u>The Effects of Aging on Recidivism Among Federal Offenders</u>, a report which found:

> …age and criminal history exerted a strong influence on recidivism. For offenders in Criminal History Category 1, the rearrest rate ranged from 53.0% for offenders younger than 30 at the time of release to 11.3 for offenders age 60 or older… (page 9)

In the report "Mandatory Recidivism, the Criminal History Computation of the Federal Sentencing Guidelines, at page 15 of 38, "(b) offenders with minimal prior criminal history have substantially lower recidivism rate." Mr. Parlagreco will be 37 when sentenced, with a minimum mandatory sentence of at least 15 years in the present case. He would certainly fall into the category of least likely to offend after he is released.

## DOWNWARD DEPARTURE

Downward departure under 5H 1.11 for military service is permitted for the Court's Consideration under the Guidelines. As provided under 5H 1.11, military service may be relevant in determining whether a departure is warranted. In this case, Parlagreco served 4 years in the Navy, is a disabled Veteran, has been treated by the VA in Martinsburg, WV since his release from the Navy. As noted in the presentence report, he was diagnosed with a 60% disability rating related to his service in the Navy. When taken together with the fact that he is a first offender, 37 years old, has fully accepted responsibility, the policy statement in reference to substantial sentences and the criticism of harsh sentences resulting from application of the pornography guidelines it is requested that the Court give consideration for a downward departure under 5H1.11.

## POSITION OF DEFENSE WITH RESPEST TO AVOIDANCE OF DISPARITIES IN SENTENCING UNDER §3553(a)(6)

Counsel would refer the Court to the following cases involving conspiracy to Produce, Distribute and Possess child pornography sentenced by this Court in Alexandria, Va., United States v Brian Hendrix, criminal case number 1:15CR00172-05, United States v Karlo Hitosis criminal case number 15-cr-00172-002, and United States v Carl Zwengel, criminal case number 1:15CR42 (TSE). Those cases involved a conspiracy centered around 2 websites that were operated for the purpose of coercing and enticing minors to engage in sexually explicit conduct on web camera. The conspiracy contemplated deception and deceit by all conspiracy members to entice children to provide pornography. The following summary of facts regarding the Hendrix Conspiracy is taken from "Position of the United States on Sentencing" pages 1-3, United States v Brian K. Hendrix, attached hereto and marked as EXHIBIT 4.

## GOVERNMENT'S SUMMARY OF EVIDENCE IN HENDRIX CONSPIRACY

Website a and b recruited minors to visit the website from mainstream social media websites. These members of the conspiracy were referred to as "linkers," identified children on social media websites, and provided the children with links to website a and b. Upon entering the website, the child was directed to a chat room for what was ostensibly a private chat with another individual. The adult members of the conspiracy would text chat with the minors pretending to be a minor themselves. Chat usually preceded with adult members encouraging minors to turn on the web camera. The camera streamed a pre-recorded video of a prior minor victim engaging in sexually explicit conduct. This type of video was referred to as a "loop." Using a combination of text chatting and deceptive loop videos were employed to entice and coerce minors to engage in sexually explicit conduct on

the web camera. All of the above facts were summarized from the Government's Sentencing Memorandum in the Hendrix Case.

The FBI identified more than 65,000 videos created on the websites, and of these, approximately 9,000 constitute child pornography. Some of the videos depict minors engaging in masturbation. Members achieved a certain rank based on level of contribution to the website and were permitted to download the recorded videos. At the time of the PSR, of the estimated 1000 victims, the FBI had identified 240 minor victims, and at least 137 of these victims were enticed to engage in sexual activity on web camera. At least 18 of the victims engaged in sexually explicit conduct were under the age of 12. (*emphasis added*) The Defendant, Mr. Hendrix, chatted with children and used loop videos to deceive them into thinking he was a teenaged girl. He also occasionally tried to link minors to the site. The total guidelines in Hendrix's case came to 45. The United States Attorney agreed that the PSR correctly applied the specific offense characteristics and appropriately calculated the adjusted level offense. The government stated the following with respect to the nature and seriousness of the offense in Hendrix's case (Position of the US on Sentencing in Hendrix at page 7),

> …The conspiracy consisted of both the production and distribution of child pornography. The sophistication of the conspiracy, including the distinct roles played by members in this technical automation, resulted in the victimization of potentially 1000 minors, more than 130 have been identified by the FBI as minors who engaged in sexual activity on the website.

The government said the following with respect to B. Just punishment, Deterrence, and the Need to Avoid Unwarranted Sentence Disparities, page 9 of the Government's Position memorandum,

> In regard to just punishment and need to avoid unwarranted sentence disparities, the Court has sentenced 5 similarly situated co-defendants:
> - William Morgan was sentenced to a term of 252

- months imprisonment and 10 years of supervised release (September 18, 2015)
- Carl Zwengel was sentenced to a term of 216 months imprisonment and 10 years of supervised release (October 2, 2015)
- Christopher McNevin was sentenced to a term of 228 months imprisonment and 10 years of supervised release (December 4, 2015)
- Karlo Hitosis was sentenced to a term of 216 months imprisonment and 10 years of supervised release (February 5, 2016)
- Stephan Funk was sentenced to a term of 252 months imprisonment and 20 years of supervised release (December 4, 2106) (sic)

Mr. Hendrix's calculation under the Guideline was 45, and Mr. Hendrix agreed to the calculation. Brian Hendrix was sentenced per the Order of the Court:

> This term of imprisonment consists of TWO HUNDRED AND FIFTY-TWO (252) MONTHS on Count 1, TWO HUNDRED AND FOURTY (240) MONTHS on Count 2, and TWO HUNDRED AND FOURTY (240) MONTHS on Count 3, all of these terms to be served concurrently with one another.

This Judgement Order in the Hendrix case is attached hereto and marked as EXHIBIT 5.

The conspiracy in the Hendrix case was, in the government's word's "sophisticated and well executed by a number of men through a website network that enticed more than 200 minor victims into providing the conspiracy with images of pornography of minor children including children engaged in illicit, sexually explicit acts." The numbers in the Hendrix conspiracy far exceed the number of minor victims in the Parlagreco case. The Parlagreco case was not executed by a sophisticated group as in the Hendrix case, but rather by a disabled veteran, whose life had spiraled down into a dark hole, for which he was being treated at the VA Medical Center, in Martinsburg, West Virginia. Up until his discharge for physical disability, it appears that Parlagreco had an excellent Naval record and experienced a crush of disappointment when he was discharged for physical disability, which ruined any

chance that he may become a Navy SEAL. Counsel suggests this contributed to his downward spiral and involvement in the dark world of pornography.

Mr. Parlagreco has no prior criminal records or arrests, has the support of his family, both here and in Italy, as reflected by the letters from his mother and family members. Mr. Parlagreco was honest with the investigators during his interview and agreed to give them his account information to help identify other individuals engaged in child pornography. He has accepted full responsibility for his actions and has sought counseling while incarcerated. The Defense respectfully asks that the Court consider a departure or variance based on his unblemished military record as a combat veteran, and his service to his country.

Among the factors under §3553 (a) (6), is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The Hendrix conspiracy seems very close to what the Court is confronted with in Parlagreco, except for the fact that Hendrix and his co-defendants were not combat veterans and enticed many more victims, with a far more sophisticated plan.

In the case of United States v Samas, 561 F3d 108 at page 110 the Court said the following:

> …§3553 (a) directs district Courts to ·impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.

If two hundred and fifty-two (252) months for Mr. Hendrix was sufficient but not greater than necessary to comply with §3553, than Mr. Parlagreco should receive less than two hundred and fifty-two (252) months, but certainly no higher than two hundred and fifty-two (252) months.

ENTERED this 5th day of March 2021.

RESPECTFULLY SUBMITTED:

*[signature]*

Blair D. Howard, Esquire
Virginia Bar No. 04947
Howard, Clark and Howard
7 Hotel Street
Warrenton, Virginia 20186
(540) 422-0100
FAX (540) 422-0099

## CERTIFICATE

I hereby certify that on this 5th day of March 2021, I have sent via first-class mail and email, a true exact copy of the foregoing Notice to Jessica Urban, Trial Attorney, and Jonathan S. Keim, Assistant U.S. Attorney, Eastern District of Virginia, 2100 Jamison Avenue, Alexandria, Virginia 22314, jessica.Urban@usdoj.gov, Jonathan.Keim@usdoj.gov.

*[signature]*

Blair D. Howard