

EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN K. HENDRIX<br><br>Defendant | Criminal No. 1:15-cr-172-5 |

## POSITION OF THE UNITED STATES ON SENTENCING

The defendant participated in a sophisticated conspiracy to produce child pornography by coercing and enticing minors to engage in sexually explicit conduct on web camera. This conspiracy resulted in the victimization of more than two hundred identified minors and thousands of child-pornography videos. The defendant was convicted of one count each of conspiracy to produce child pornography, conspiracy to distribute and receive child pornography, and conspiracy to access with intent to view child pornography after a jury trial.

For the reasons stated below, the government recommends a substantial sentence, commensurate with the 30-year statutory maximum term of imprisonment for Count 1, followed by a 10-year term of supervised release. This sentence should be greater than the sentences received by his co-conspirators, because the defendant did not accept responsibility for his crimes, but instead blamed the leader of the conspiracy.

**I.  Offense of Conviction**

As laid out in the Presentence Investigation Report, at trial, and in the statement of facts for co-conspirators, the conspiracy centered on two websites (Website A and Website B) that were operated for the purpose of coercing and enticing minors to engage in sexually explicit

1

conduct on web camera. Members of the websites recruited minors to visit their websites from mainstream social media websites, such as Youtube. These members, referred to as "linkers," identified children on social media websites and provided the children with links to Website A or B. Clicking on the link took a child to Website A or B.

Upon entering one of the websites, a child was directed to a chat room for what was ostensibly a private chat with another individual. That individual was usually an adult member of Website A or B. The adult member, referred to as a "chatter," text-chatted with the minor, typically pretending to also be a minor himself. The chat usually proceeded with the adult member encouraging the minor to turn on his or web camera. The adult member then pretended to also go on web camera but in fact streamed a pre-recorded video of a prior minor victim engaging in sexually explicit conduct. This type of video was referred to as a "loop." Using a combination of text-chatting and deceptive loop videos, the members of the websites enticed and coerced the minor to engage in sexually explicit conduct on web camera.

The websites had group chat rooms called "lounges." The members of the websites chatted with each other in the lounges, often discussing their tactics for enticing children and, in real-time, chats occurring between a member and a child on the websites. The websites allowed members to view these chats and the streaming web camera invisibly, that is, without the child realizing that someone other than the individual with whom she was chatting was watching.

The websites were also programmed to record all videos streamed in the chats. The FBI has identified more than 65,000 videos created on the websites. Of these, approximately 9,000 constitute child pornography. Some of these videos depict minors engaging in masturbation. Members who achieved a certain rank based on their level of contribution to the websites were permitted to download the recorded videos.

2

As of the date of the PSR, of the estimated 1,000 victims, the FBI had identified at least 240 minor victims. PSR ¶ 34. At least 137 of these victims were enticed to engage in sexual activity on web camera. PSR ¶ 34. At least 18 of the victims who engaged in sexually explicit conduct were under the age of 12. PSR ¶ 34.

As established at trial, the defendant was an upgraded member of both Websites A and B. As part of the conspiracy, the defendant chatted with children and used loop videos to deceive them into thinking he was a teenage girl. He also occasionally tried to link minors to the site.

## II. The Advisory Guidelines Range

The defendant's advisory Sentencing Guidelines Range was correctly calculated by the Probation Office as a total offense level of 43, with a guidelines range of life imprisonment, restricted by the statutory cap of 70 years imprisonment, and a criminal history category of I:

| Guideline | |
|---|---|
| Base Offense Level (Section 2G2.1(a)) | 32 |
| Minor Under 12 (Section 2G2.1(b)(1)(A)) | +4 |
| Distribution (Section 2G2.1(b)(3)) | +2 |
| Misrepresentation of Identity/Use of Computer (Section 2G2.1(b)(6)(A) and (B)) | +2 |
| Enhancement for More Than 5 Victims (Section 2G2.1(d)(1) | +5 |
| TOTAL | 45 |

PSR ¶¶ 42–64.

The PSR correctly applied the specific offense characteristics and appropriately calculated the adjusted offense level. As mentioned in the PSR, at least 18 minors under 12 were victimized, and there are at least 240 identified minor victims. An increase of 4 levels under

§ 2G2.1(b)(1)(A) for minor under 12 is therefore appropriate. The adjustment for multiple victims was also correctly calculated at the maximum of 5 levels given there were at least 5 minors under the age of 12. *See* U.S.S.G. § 2G2.1(d)(1); § 3D1.4.

The PSR also correctly increased the base offense level by 2 levels for distribution. *See* U.S.S.G. § 2G2.1(b)(3). As an initial matter, the defendant was found guilty of conspiracy to distribute child pornography in Count 2 of the superseding indictment. The application note to § 2G2.1(b)(3) defines distribution as "any act, including . . . production [or] transmission . . . , related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.1, application note 1. This definition is very broad, using the terms "any" and "related to." *See United States v. Hecht*, 470 F.3d 177, 182–83 (4th Cir. 2006) (citing *United States v. Wildes*, 120 F.3d 468, 470 (4th Cir. 1997)). This two-level enhancement for distribution applies in this case for two reasons. First, the main tactic used as part of the conspiracy to coerce minors to produce child pornography was streaming pre-recorded videos called "loops." SOF ¶ 4. These loops included videos of minors engaged in sexually explicit conduct. By streaming the loops in the chats with minors, members of the conspiracy distributed child pornography. *See Hecht*, 470 F.3d at 82–83 (finding the identically defined distribution enhancement in U.S.S.G § 2G2.2(b)(2) applied to defendant's pointing his web camera at child pornography on his computer screen and transmitting the images to a person with whom he was having an online conversation); *see also United States v. Holt*, 408 F. App'x 229, 239 (11th Cir. 2010) (finding that § 2G2.1's distribution enhancement applied where defendant showed a child-pornography image on his cell phone to a third party).

A second major aspect of the conspiracy also involved distribution. The websites were configured to automatically record the web camera-created videos, many of which included child

pornography. SOF ¶¶ 4, 7. Members of the conspiracy were rewarded for their contributions to the websites with the ability to download these recorded videos. SOF ¶ 4, 6. Recording and downloading child-pornography videos are "acts . . . related to the transfer of material involving the sexual exploitation of a minor," U.S.S.G. § 2G2.1(b)(3), and the distribution enhancement applies based on this feature of the websites.

### III. Sentencing Factors

Although the Sentencing Guidelines are advisory, the Court is required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). A "district court shall first calculate . . . the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted). The § 3553(a) factors include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- the kinds of sentences available;
- the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
- any pertinent policy statement;
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(k), the authorized term of supervised release for the defendant's offense is any term not less than five years to life. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The authorized term of supervised release for the offense here reflects heightened concern about recidivism and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). In considering the length and conditions of supervised release, the court should consider the nature and circumstances of the offense, the defendant's history and characteristics, adequate deterrence, the defendant's need for training, medical care or treatment, the kinds of sentence and range established in the Sentencing Guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and restitution. *See* 18 U.S.C. §3583(c) (courts should consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4); (a)(5), (a)(6) and (a)(7)); *see also United States v. Helton*, 782 F.3d 148 at FN* (4th Cir. 2015).

**IV.   Argument**

Defendant's production of child pornography offense is serious. In *New York v. Ferber*, 458 U.S. 747, 758 (1982), the Supreme Court recognized that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758 (citations omitted); *see also United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014). The *Ferber* court also observed that the "[pornographic] materials

produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography ... It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at 759 & n. 10 (citations omitted). *See also Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990) (reaffirming *Ferber* in case involving possession of child pornography).

### A. *The Nature and Seriousness of the Offense*

Defendant participated in a conspiracy that caused far-reaching harm. This is not a case of simple possession or receipt of child pornography. The conspiracy consisted of both the production and distribution of child pornography. The sophistication of the conspiracy, including the distinct roles played by members and its technical automation, resulted in the victimization of potentially 1,000 minors, more than 130 of whom have been identified by the FBI as minors who engaged in sexual activity on the website.

These minors and their families have suffered real harm, as documented in the victim impact statements included in the presentence investigative report and as described in the live victim impact statements provided to the court at the sentencing hearings of two co-defendants. For example, as expressed by one parent, her 11-year-old daughter "who was once strong willed, outgoing, and full of life ... now ... feels worthless and broken." Dkt. 173-1, PSR, Victim Impact Statements at 17. According to the parent of another child who was victimized at 10 years old, her family "[has] been fractured by it." *Id.* at 24. That same child had night terrors

7

and began talking about suicide about a year after she was victimized. *Id.* It may be tempting to discount the abuse in this case because it occurred online, but these young victims are riddled with life-altering guilt, shame, insecurity, and fear as a result of this conspiracy, and it has severely affected the child victims' schooling, family life, and emotional and mental health. *See generally id.*

The minors have suffered not only by the deception, manipulation, and abuse that led to the creation of videos, but also from the knowledge that they were recorded and viewed by multiple adult members of the conspiracy. They will further suffer from the fear that the videos of them, created through manipulation and without their knowledge or consent, can be more widely circulated.

As demonstrated by the testimony and exhibits at trial, the defendant was an active participant in the conspiracy. He was an upgraded member who had access to the private sides of the websites, and he chatted, looped, and linked. He also had access to the recorded videos for download. He used several usernames on the websites, including "tazz," "steph," "doug," "brandy," and "bosh." As shown in Government Exhibit 168, a summary chart admitted at trial, the defendant chatted with and coerced at least 42 minors to engage in sexual activity—including masturbation with foreign objects on at least four occasions—and attempted to coerce many others. He chatted with at least 55 identified victims, including at least twelve who were 12 years old or younger. He also chatted with minors who had yet to be identified at the time of trial, but who represented themselves on Website A to be as young as 8 years old. And he successfully coerced one girl who said she was 8 years old to engage in sexually explicit conduct on web camera.

Website A and Website B operated in secrecy for months before becoming known to law enforcement. The conspiracy, because it operated online, was easy to conceal. A substantial period of supervised release should therefore be imposed to ensure defendant obtains the treatment he needs and to help prevent him from engaging in future similar conduct, which could again elude law enforcement.

### B. *Just punishment, Deterrence and the Need to Avoid Unwarranted Sentence Disparities*

In regard to just punishment and the need to avoid unwarranted sentence disparities, the Court has sentenced five similarly situated co-defendants:

- William Morgan was sentenced to a term of 252 months imprisonment and 10 years of supervised release (September 18, 2015)

- Carl Zwengel was sentenced to a term of 216 months imprisonment and 10 years of supervised release (October 2, 2015)

- Christopher McNevin was sentenced to a term of 228 months imprisonment and 10 years of supervised release (December 4, 2015)

- Karlo Hitosis was sentenced to 216 months imprisonment and 10 years of supervised release (February 5, 2016)

- Stephen Funk was sentenced to 252 months imprisonment and 20 years of supervised release (April 1, 2106)

The defendant and these co-defendants all served similar, upgraded roles in the conspiracy: they were primarily "chatters" and "loopers," who posed as minors to entice children to engage in sexually explicit conduct.

Defendant is different from these co-defendants, however, in one important respect. Each of these co-defendants accepted responsibility for their crimes and pleaded guilty. The defendant did not accept responsibility, pleaded not guilty, and put the government to its burden

9

at trial. This involved the testimony of an 11-year-old minor victim and parents of other minor victims. The defendant also put forth a defense that involved blaming the leader of the conspiracy, known as Alfie, for the defendant's conduct through a theory that Alfie remotely accessed the defendant's computer. The defendant should therefore receive a greater sentence than his co-conspirators—a sentence in excess of 21 years imprisonment—to account for his lack of acceptance of responsibility for his crime.

### C. *History and Characteristics of the Defendant*

Defendant's criminal history score is zero. PSR ¶ 67. The defendant did not have an easy childhood and reports abuse and neglect by his parents. PSR ¶¶ 71-78. He also reports sexual abuse by a cousin and has "vague memories of his father touching him inappropriately." PSR ¶ 76. The defendant's schooling ended at 8th grade, and he struggled with attendance and repeated three grades, seemingly because his parents made him work nights. PSR ¶ 75, 97–99. For about the last ten years, the defendant has been employed in the restaurant/fast food industry, including most recently as a manager at a fast-food restaurant. PSR ¶ 100–102. The defendant is divorced from his wife, with whom he has an 11-year-old son. PSR ¶ 85.

### V. Restitution

Restitution in a production of child pornography case is mandatory. 18 U.S.C. § 2259 ("[T]he Court shall order restitution for any offense under [Chapter 110]."). The procedures in 18 U.S.C. § 3664 apply to restitution requests under § 2259. Under § 3664(d)(5), the Court may set a restitution hearing at a later date not to exceed 90 days after sentencing in a case where the victims' losses are not ascertainable by 10 days before sentencing.

The Court has received restitution requests from four victims, Minor I, Minor O, Minor P, and Minor X. The Supreme Court clarified in *Paroline v. United States* that "[r]estitution is

... proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." 134 S. Ct. 1710, 1722 (2014).[1] When determining restitution in a conspiracy case, the relevant offense is the conspiracy; each member of the conspiracy is therefore liable for the losses proximately caused by the conspiracy, not limited to those losses caused by the defendant's individual actions. *See United States v. Seignious*, 757 F.3d 155, 161 (4th Cir. 2014); *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) (citing *United States v. Laney*, 189 F.3d 954, 964–66 (9th Cir. 1999)). Under § 3664(h), "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's losses." If it decides to apportion liability, the Court is permitted to consider the economic circumstances of each defendant. 18 U.S.C. § 3664(h).

The defendant should be required to pay restitution to Minor I, who requested restitution in the amount of $11,400, Minor O, who requested restitution in the amount of $65.00, Minor P, who requested restitution in the amount of $3,700, and Minor X, who requested restitution in the amount of $50.00. Dkt. No. 173-1.[2] The losses sought by these victims, as detailed in the presentence investigation report, are proper under 18 U.S.C. § 2259 (requiring payment of the

---

[1] *Paroline*, for the most part, addressed issues not present in this case. In *Paroline*, the Supreme Court grappled with the particularly difficult task of determining and apportioning the amount of restitution in a case where the defendant only possessed the images of the victim. 134 S. Ct. at 1722–29. In this case, defendant pleaded guilty to a conspiracy to *produce* videos of the victims. There is therefore no need in this case to disaggregate the losses caused by the initial production of child pornography and those losses caused by the subsequent distribution and possession of those images.

[2] All of the defendant's coconspirators who pleaded guilty have agreed to pay restitution jointly and severally for the losses sought by Minor I, Minor O, Minor P, and Minor X. Restitution orders have been entered for all except Mr. Milton Smith, who has not yet been sentenced.

11

"full amount of the victim's losses," to include medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense).

## VI. Conclusion

Given the guideline range of life imprisonment; the uniquely high number of minor victims, including dozens whom the defendant directly enticed; and the defendant's lack of acceptance of responsibility, including blaming another for his crimes, a substantial sentence, commensurate with the 30-year statutory maximum for Count 1 and greater than 21 years, followed by 10 years of supervised release is appropriate in this case.

                                      Dana J. Boente
                                      United States Attorney

                     By: _____/s/_____
                                      Lauren Britsch
                                      Special Assistant United States Attorney (LT)
                                      Tracy Doherty-McCormick
                                      Assistant United States Attorney
                                      2100 Jamieson Avenue
                                      Alexandria, Virginia 22314
                                      Phone: 703-299-3973; Fax: 703-299-3981
                                      Email: lauren.britsch2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory Todd Hunter
Law Office of Gregory Hunter
2055 North 15th Street, Suite 302
Arlington, VA 22201
(703) 966-7226; 703-527-0810 (fax)
greghunter@mail.com

I also hereby certify that I have sent the foregoing through electronic mail to the following individual:

Nina S. Blanchard
Senior U.S. Probation Officer
Blue Ridge Office Center
10500 Battleview Parkway, Suite 100
Manassas, Virginia
Nina_Blanchard@vaep.uscourts.gov

/s/
Lauren Britsch
Special Assistant United States Attorney (LT)
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3973
Email Address: lauren.britsch2@usdoj.gov